**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **F.C., M.C.-1, K.C., and W.C.**

**No. 18-0757** (Berkeley County 17-JA-127, 17-JA-128, 17-JA-129, and 17-JA-130)

## MEMORANDUM DECISION

Petitioner Father M.C.-2, by counsel Jared Adams, appeals the Circuit Court of Berkeley County's July 26, 2018, order terminating his parental rights to F.C., M.C.-1, K.C., and W.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), William Prentice Young, filed a response on behalf of the children also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in terminating his parental rights upon an erroneous finding that he abandoned the children. Petitioner also argues that the circuit court erred in admitting hospital records without proper authentication.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2017, the DHHR filed a child abuse and neglect petition against petitioner and the mother of F.C. and M.C.-1.[2] The mother only attended one prenatal

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as M.C.-1 and M.C.-2, respectively, throughout this memorandum decision.

[2]At the time the petition was filed, petitioner and the mother had custody of F.C. and B.L. B.L. is the mother's child from a previous relationship and is not at issue on appeal. The mother had only recently given birth to M.C.-1, who remained in the hospital at the time the petition was filed. Petitioner shared joint custody of his two other children from a previous relationship, K.C. and W.C., with their mother.

appointment at fourteen weeks gestation and prematurely gave birth to M.C.-1, at twenty-seven weeks gestation, in a vehicle. Upon arriving at the hospital, the mother tested positive for fentanyl. The child had to be resuscitated and placed in an incubator. The mother denied that she or petitioner abused drugs, but admitted she had taken Percocet during her pregnancy. However, contrary to her assertions, the mother had a substantiated history of drug abuse.[3] A Child Protective Services ("CPS") worker spoke to the hospital social worker, who reported that the parents had been sporadic in their visits with the child since her birth and appeared to be under the influence of drugs. The social worker further reported that M.C.-1's drug test showed that she tested positive for cocaine and morphine at birth. The CPS worker spoke to petitioner, who denied that the mother abused cocaine and stated that he believed the hospital's drug screens were wrong. He conceded that he knew the mother was taking Percocet without medical treatment. The CPS worker also spoke with then-seven-year-old B.L., who reported observing his mother abuse drugs in the home. The DHHR concluded that petitioner had knowledge of the mother's substance abuse and failed to protect M.C.-1 during the pregnancy. Further, due to his failure to protect M.C.-1 after knowing of the mother's unauthorized use of Percocet while caring for F.C. and B.L., the DHHR alleged that he could not ensure the safety of his other children, K.C. and W.C.

The circuit court held a preliminary hearing in December of 2017. Petitioner failed to attend the hearing but was represented by counsel. The CPS worker testified regarding the allegations contained in the petition and noted that petitioner had knowledge of the mother's unauthorized use of Percocet. The CPS worker testified that the mother told petitioner she was pregnant and, as such, he had knowledge of her pregnancy during the time she was using Percocet. After hearing evidence, the circuit court found reasonable cause that there was imminent danger to the children.

In March of 2018, the circuit court held an adjudicatory hearing. Petitioner failed to attend the hearing but was represented by counsel. Counsel for petitioner requested a continuance, which was denied. During the hearing, the circuit court provisionally admitted medical documents showing the positive drug screens of the mother and M.C.-1.[4]

---

[3]The record indicates that the mother was previously involved in child abuse and neglect proceedings due to her drug use and F.C., petitioner's child, was at issue in that proceeding. Petitioner was listed as a non-abusing parent. Further, at some point during the instant proceedings, the circuit court learned that the mother had been fired from her place of employment two weeks before M.C.-1's birth due to heroin use.

[4]The DHHR proffered that it would either call hospital personnel to testify at a later time in order to authenticate the records or subpoena the documents for the court. The record shows, however, that neither of those things took place. Ultimately, the circuit court permitted a DHHR employee to testify to its policy of obtaining medical records in order to authenticate these records, over petitioner's objection.

Thereafter, the CPS worker testified that petitioner was aware that the mother was taking unauthorized medication. While the parents claimed there had been difficulty verifying whether the mother was pregnant at that time, the CPS worker stated "there was an assumption." Further, petitioner denied the veracity of the drug screens and left F.C. in the care of the maternal grandmother, choosing to care for the mother following the birth of M.C.-1 at that time.

After hearing evidence, the circuit court noted that it took a negative inference from petitioner's failure to attend the adjudicatory hearing. Further, the circuit court found that the mother knew or should have known of her pregnancy due to attending a prenatal appointment at fourteen weeks gestation and that petitioner knew or should have known of the mother's drug use during that time. The circuit court stated "[i]f a 7-year old child [B.L.] can testify that there were needles in the house and that he saw needles in his mother's arm then [petitioner] is not excused from failing to acknowledge that she was using drugs during the time that she was pregnant." Moreover, petitioner knew of the mother's unauthorized use of Percocet and allowed her to care for F.C. and B.L. during that time. As such, the circuit court adjudicated petitioner as an abusing parent.

The circuit court held a dispositional hearing in July of 2018. Petitioner again failed to attend the hearing but was represented by counsel. A DHHR worker testified that petitioner had done nothing to address the issues that led to the filing of the petition. The worker stated that the DHHR set up drug screening, arranged for visitation with the children, and provided information on drug rehabilitation programs. However, petitioner did not avail himself of any services and had not visited M.C.-1 in three to four months. After hearing evidence, the circuit court found that the DHHR was willing to assist petitioner by providing services, but that he did not avail himself of the opportunity. The circuit court further found that petitioner's actions and inactions demonstrated the settled purpose to forego his parental duties to the children, constituting abandonment. Finally, the circuit court determined that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the children's welfare. It is from the July 26, 2018, dispositional order terminating his parental rights that petitioner appeals.[5]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether

---

[5]Petitioner's parental rights to his children were terminated below. The parental rights of the mother of F.C. and M.C.-1 were also terminated below and the permanency plan for these children is adoption by the maternal grandmother. The mother of K.C. and W.C. is a non-abusing mother and the permanency plan for these children is to remain in the care of their non-abusing mother.

such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in admitting hospital records that were not properly authenticated. According to petitioner, the positive drug screens for the mother and M.C.-1 should not have been admitted because the DHHR failed to call an employee from the hospital to testify and failed to obtain the records by subpoena. We decline to address this issue on appeal, however, because even assuming for the sake of argument that the medical records at issue were not sufficiently authenticated, the record contains overwhelming evidence of petitioner's abuse and/or neglect of the children. Specifically, the record contains uncontradicted evidence that the mother abused drugs while the children were in her care and that petitioner was aware of her substance abuse and should have had knowledge of her pregnancy following her first prenatal appointment. Upon being admitted to the hospital, the mother admitted that she consumed Percocet without a prescription while the children were in her care. Moreover, the record demonstrates that B.L. reported witnessing his mother with needles in her arm and, only two weeks prior to M.C.-1's birth, the mother was fired from her place of employment due to heroin use. As such, even without the medical records establishing that the mother and M.C.-1 tested positive for drugs at the birth, there was sufficient evidence to establish the mother's drug use and petitioner's knowledge of the same while the children were in their care. Indeed, petitioner admitted that he was aware of the mother's use of Percocet without a prescription. Accordingly, we find no error.

Petitioner also argues that the circuit court erred in terminating his parental rights based upon abandonment when abandonment was not alleged in the petition and he was not adjudicated based upon abandonment.[6] We find no merit in petitioner's argument.

---

[6]As part of his argument, petitioner states that the circuit court erred in terminating his parental rights to K.C. and W.C. when the DHHR's case focused on his knowledge of M.C.-1's mother's drug use during her pregnancy. According to petitioner, these issues did not affect K.C. and W.C., who were in the care of their non-abusing mother. Further, petitioner avers that he was not adjudicated as an abusing parent with regard to K.C. and W.C. and, as such, the circuit court could not terminate his parental rights to these two children. We disagree.

Here, the adjudicatory order clearly states that M.C.-1 was adjudicated as an abused child and that petitioner was adjudicated as an abusing parent. Although K.C. and W.C. lived with

(continued . . .)

4

Here, petitioner is correct that abandonment was not alleged in the petition, nor was evidence regarding abandonment produced at the adjudicatory hearing. However, we find that the record supports termination of petitioner's parental rights to the children apart from any alleged erroneous finding regarding abandonment. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) clearly indicates that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child. . . .

The record demonstrates that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. The DHHR provided services, such as drug screens and visitation with the children, and provided resources regarding drug abuse treatment programs. Despite being given these opportunities, petitioner failed to participate in any aspect of the proceedings below. Petitioner did not submit to drug screens, nor did he participate in visits with M.C.-1. Indeed, the CPS worker testified that petitioner had not visited the child in three to four months. Moreover, petitioner failed to attend his preliminary, adjudicatory, and dispositional hearings. Accordingly, it is clear that petitioner failed to participate in any services designed to correct the conditions of abuse and neglect.

With regard to petitioner's argument that the circuit court erroneously found abandonment at the dispositional hearing and relied upon the same in terminating his parental rights, we note that

---

their non-abusing mother during the week, petitioner shared joint custody of the children and saw them on the weekends. Our law recognizes that children living in the same household of a child who is abused are also at risk. West Virginia Code § 49-1-201 defines an "abused child" as "[a] child whose health or welfare is being harmed or threatened by: (A) A parent, guardian, or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or *another child in the home*." (emphasis added). Petitioner does not take issue with M.C.-1's adjudication as an abused child and, because the record demonstrates that petitioner shared custody of K.C. and W.C. with the mother, their health or welfare were threatened by the abuse inflicted on M.C.-1. Accordingly, we find that petitioner's adjudication as an abusing parent extends to K.C. and W.C. and the circuit court did not err in proceeding to disposition with regard to these children.

5

"[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). Even assuming, for the sake of argument, that the circuit court made erroneous findings regarding abandonment at disposition, the process was not substantially disregarded or frustrated such that vacation of the order is necessary. Rather, based upon petitioner's refusal to participate in the proceedings below and his failure to address the issues of abuse and/or neglect through the services provided, we find that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future and further find that termination of his parental rights was necessary for the children's welfare. Therefore, the circuit court did not err in terminating petitioner' parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 26, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 21, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment